UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID O. CUNNINGHAM | CIVIL ACTION |
| VERSUS | NO. 08-4126 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "J" (2) |

**FINDINGS AND RECOMMENDATION**

Plaintiff, David O. Cunningham, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

I.  PROCEDURAL HISTORY

Cunningham filed applications for DIB and SSI on June 16, 2006, alleging disability since May 1, 2006 because of neck and back injuries and numbness in his hands. (Tr. 57-62, 64). After his applications were denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 27, 2007. (Tr. 25-36). On September 26, 2007, the ALJ issued a decision denying plaintiff's applications. (Tr.

10-23). Plaintiff submitted new medical evidence to the Appeals Council. (Tr. 188-223). After the Appeals Council denied review on July 10, 2008 (Tr. 1-3), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II. STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A. The ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating physician as required by 20 C.F.R. § 404.1527.

B. The ALJ's decision was not based on substantial evidence.

III. ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1. Plaintiff has severe impairments consisting of status post-cervical fusion in 1995, spondylosis deformans and osteochondrosis at C5-6 and C6-7, and degenerative changes of the thoracolumbar spine.

2. Cunningham's impairment or combination of impairments do not meet or equal any listed impairments found at 20 CFR, Part 404, Subpart P, Appendix 1, specifically including Listing 1.04(A).

3. Although his impairments could reasonably be expected to produce the alleged symptoms, plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible.

4. Cunningham has the residual functional capacity to perform a limited range of light work. He is not specifically limited in his ability to sit. He cannot climb ramps, stairs, ladders, ropes or scaffolds; cannot reach above shoulder level; and must avoid concentrated exposure to vibrations. He can crouch, stoop and crawl occasionally. He should have the option to alternate between sitting and standing.

5. He cannot perform his past relevant work as a pipe tester, which was semi-skilled, heavy to very heavy work.

6. Considering plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform, including cashier, interviewer and assembler.

(Tr. 15-22).

IV. ANALYSIS

　A.　Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209

F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2007). The regulations include a five-step evaluation process for determining whether an impairment prevents

---

[1] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is

---

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

B.  Factual Background

Plaintiff testified that he was 44 years old and had completed the ninth grade. He said that he can read and write. (Tr. 27).

Cunningham stated that he began having problems right after Hurricane Katrina,[3] when he was loading sheetrock onto a cart at Home Depot. (Tr. 27-28, 33). He testified that he slipped in some sheetrock dust, fell head first and re-injured his neck. (Tr. 28, 33). He said that his ears were ringing and he had a tremendous headache after he fell.

Plaintiff testified that he previously had surgery on the C5 and C6 discs in his neck in 1995, following a motor vehicle accident in which he hit his head on the steering

---

[3] Hurricane Katrina made landfall in the New Orleans area on August 29, 2005. Richard D. Knabb, Jamie R. Rhome & Daniel P. Brown, Tropical Cyclone Report, Hurricane Katrina, 23-30 August 2005 at 3 (Nat'l Hurricane Ctr., Dec. 20, 2005), avail. at http://www.nhc.noaa.gov/2005atlan.shtml.

wheel. He said that he never completely recovered after the surgery and that he continues to have constant pain in his neck, which radiates down his back on his spine and causes trouble with his knees, which sometimes give out.

Plaintiff testified that he had recently fallen and injured his ankle, but it did not break. He stated that he wore a half-cast on his ankle for three months. He said that the ankle is still swollen and that the swelling will not go down despite soaking it in cold water and applying ice. (Tr. 28).

Cunningham said that he is unable to stand four days in a week. He testified that he helps his mother by washing clothes and washing dishes in the dishwasher. He said that he has to sit down in a recliner after doing such chores and that he cannot do anything else for an hour or two. He said that this happens four times per day, and that he sleeps for two to three hours each time. He stated that his medications help "very much" and that he has no side effects except some slight memory loss. He said that he takes a pill when he hurts during the day and that he should wake up after a couple of hours, but that sometimes he sleeps a little longer. (Tr. 29).

Plaintiff stated that he typically wakes up at 7:30 a.m., starts doing the laundry and the dishes, then watches television for a while because his knees will give out or his back or neck will hurt. He said his neck is tremendously painful. He testified that he goes to sleep and will begin household chores when he wakes up, but that he has to lie down

again after about two hours and will go to sleep once again. (Tr. 30). He stated that he cannot work for several reasons: (1) no employer would allow him to stop working every four hours, (2) he is in too much pain, (3) he might need surgery, (4) his knees give out and (5) he cannot stand up. (Tr. 30-31). He said he could not perform a sedentary job because his medication would probably cause him to fall asleep.

Cunningham testified that he can sit for about one to two hours, but that he moves constantly to try to get comfortable. He said that, if it hurts too much, he will get up and walk as much as he can, then sit down again. He stated that he cannot stand for long because his knees give out.

Plaintiff said he is raising his son on his own. He testified that he can walk along while his son rides his bike for about one and one-half blocks, but then his knees or his lower back will start hurting badly. He said it feels like bricks building up on his shoulders and pressing on his shoulders and neck. He stated that he spends most of his day on a recliner or a couch. (Tr. 31).

Cunningham said he worked as a pipe tester on a naval ship at Northrup Grumman shipyard in Avondale, but that he was laid off after Hurricane Katrina. (Tr. 32). He testified that he lifted 100 to 110 pounds in his job at Avondale. (Tr. 33). Plaintiff testified that, after he was laid off, he worked for one day at House of Doors, a company that builds doors and door frames. He said that his job was cleaning up and stacking

8

doors onto a buggy. He stated that he was told he could not work there because of the medication he was taking. (Tr. 32).

### C. Vocational Expert Testimony

A vocational expert, Cindy Harris, testified at the hearing. She stated that plaintiff's past relevant job as a pipe tester was semi-skilled, heavy to very heavy work.

The ALJ posed a hypothetical of a claimant who can lift and carry up to 20 pounds and can lift and carry 10 pounds frequently with normal breaks for at least two hours in an eight-hour work day. The hypothetical person can sit with normal breaks for six hours, but would need the option of sitting and standing, and can never climb ladders, ropes and scaffolds. (Tr. 33). This person could occasionally stoop, crouch and crawl, but could not reach above shoulder level and must avoid concentrated exposure to vibrations. (Tr. 33-34). Harris testified that such a claimant could not perform Cunningham's past relevant work, but could perform jobs that are available in the national economy within the restricted range of unskilled light work, such as cashier, interviewer and assembler. (Tr. 34).

The ALJ modified the hypothetical so that the claimant would have to miss work for one to two days per month because of his health issues. The vocational expert stated that a person could sustain employment if he missed one day of work per month, but not two. The ALJ asked whether the hypothetical person could, on a consistent basis, take

more than the two breaks that employers usually allow. Harris testified that an individual would not be able to sustain employment with that condition. (Tr. 34).

Upon cross-examination by plaintiff's attorney, Harris testified that a person would not be able to perform any work if he could stand less than two hours, walk less than two hours and sit less than one hour in a work day; had extreme impairments in his ability to perform activity within a schedule, maintain regular attendance and be punctual within customary allowances; and was markedly impaired in his ability to complete a normal work day and work week without interruption from medically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 35).

### D.   Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 16-17, 19-20). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E. <u>Plaintiff's Appeal</u>

    1. <u>The ALJ did not err by failing to give controlling weight to the opinion of plaintiff's treating physician.</u>

Cunningham argues that the ALJ should have granted controlling weight to the opinions of his treating physician, Wayne Celestine, M.D., who saw and treated plaintiff about once a month from the fall of 2005 through July 2007. He also contends that the ALJ should have expressly considered all six of the factors in 20 C.F.R. § 404.1527 before rejecting Dr. Celestine's opinions, rendered on a Physical Capacity Evaluation dated January 31, 2007, that Cunningham could stand and/or walk less than two hours and sit less than one hour in a work day; had extreme impairments in his ability to perform activity within a schedule, maintain regular attendance and be punctual with customary tolerance; and had marked impairments in his ability to complete a normal work day and work week without interruption from medically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 161-63). Plaintiff argues that Dr. Celestine's opinions are well supported by clinical findings and are not inconsistent with the medical evidence.

Plaintiff's argument fails for several reasons. First, the ALJ did not ignore Dr. Celestine's findings, as plaintiff contends. The ALJ reviewed Dr. Celestine's records and relied on the entire medical record to find that Cunningham has severe impairments

consisting of status post-cervical fusion in 1995, spondylosis[4] deformans[5] and osteochondrosis[6] at C5-6 and C6-7, and degenerative changes of the thoracolumbar spine.

Second, to the extent that Dr. Celestine's January 31, 2007 opinion could be construed as his opinion that plaintiff is unable to work, his statement is not conclusive. It is well established that a physician's statement that a patient is disabled does not mean that the patient is disabled for purposes of the Act, because that is a legal determination that may be made only by the Commissioner. Thibodeaux v. Astrue, No. 08-30989, 2009 WL 1344809, at *4 (5th Cir. May 14, 2009) (citing Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003)).

Next, plaintiff's argument that the ALJ must consider expressly the six factors in 20 C.F.R. § 404.1527 in every case in which the ALJ rejects a treating physician's opinion sweeps too broadly. The Fifth Circuit has "conclude[d] that, <u>absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist,</u> an ALJ may reject the opinion of the treating physician only if the ALJ

---

[4]Spondylosis means either ankylosis (immobility and consolidation) of a vertebral joint, or is a general term for degenerative spinal changes due to osteoarthritis. Dorland's Illustrated Medical Dictionary 91, 1684 (29th ed. 2000) (hereinafter "Dorland's").

[5]Deformans means "marked by deformation of affected joints." Medline Plus Medical Dictionary, avail. at http://www2.merriam-webster.com/cgi-bin/mwmednlm?book=Medical&va=arthritis+deformans.

[6]Osteochondrosis is "a disease of the growth or ossification centers in children that begins as a degeneration or necrosis followed by regeneration or calcification." Dorland's at 1287.

12

performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." Newton, 209 F.3d at 453 (emphasis added); see also Thibodeaux, 2009 WL 1344809, at *4 (when the record contains "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, . . . the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."). In the instant case, reliable medical evidence (discussed below) controverts Dr. Celestine's opinion that plaintiff's back and neck impairments preclude him from fulfilling the sitting, standing, daily attendance and daily completion requirements of work. Thus, the ALJ was not required to consider expressly the six factors of 20 C.F.R. § 404.1527(d)(2).

Furthermore, the ALJ was not required to give Dr. Celestine's opinion controlling weight in these circumstances.

> A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence. . . .
> . . . . The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).

The ALJ found that Dr. Celestine's January 31, 2007 opinions were not consistent with the medical record as a whole, including Dr. Celestine's treatment records and the other clinical and diagnostic evidence. The ALJ properly relied on the opinions of consultative examiner, Mary Mathai, M.D., and a medical consultant, Julius Isaacson, M.D., who reviewed plaintiff's medical records at the initial agency level. Both of these reports contradicted Dr. Celestine's opinions concerning plaintiff's residual functional capacity. See Thibodeaux, 2009 WL 1344809, at *4 ("Substantial evidence, including [the] medical opinion [of a consulting physician], . . . supports the ALJ's finding that there was good cause to disregard [the treating specialist's] opinion on the severity of Thibodeaux's impairment."). The opinions of Drs. Mathai and Isaacson constitute good cause for the ALJ to accord little or no weight to Dr. Celestine's January 31, 2007 opinions.

Dr. Mathai, who is board certified in physical medicine and rehabilitation, examined Cunningham on September 27, 2006. She reviewed contemporaneous x-rays of his cervical and lumbar spine (Tr. 115-16) as well as the results of an MRI of his cervical and lumbar spine taken on December 2, 2003. (Tr. 157). Dr. Mathai diagnosed chronic neck, back and body pains with disc degeneration and spondylosis of the cervical spine, and degenerative changes of the thoracolumbar spine. (Tr. 112-14). She concluded that these impairments precluded Cunningham from work that involves

prolonged walking, standing, sitting, bending, carrying and heavy lifting. However, Dr. Mathai opined that he "may do sedentary to light work." (Tr. 114).

Dr. Isaacson reviewed plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment on October 5, 2006. He diagnosed cervical and thoracolumbar syndrome. Dr. Isaacson found that Cunningham can lift up to twenty pounds occasionally and ten pounds frequently, can stand and/or walk for at least two hours and can sit for about six hours in an eight-hour work day, provided that he is able to alternate sitting with standing or walking for a few minutes every ninety minutes. The physician also found that plaintiff can push and pull within the weight-lifting limits, can stoop, crouch or crawl occasionally, but should not reach overhead, climb ladders, ropes or scaffolds, or be exposed to concentrated vibrations. (Tr. 121-28). Dr. Isaacson's findings are consistent with the ability to do light work. As defined by the Commissioner's regulations, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job is also in this category if it involves very little lifting but requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(a).

Furthermore, as the ALJ explained, Dr. Celestine's January 31, 2007 Physical Capacity Evaluation was not consistent with his own treatment notes or the clinical

15

findings. Dr. Celestine's progress notes from the fall of 2005 through July 25, 2007 consistently reflect that plaintiff was doing well and that his pain was well controlled by medications without troublesome side effects. Dr. Celestine never recommended surgery or any change from plaintiff's prescribed regimen of medications, exercise and the application of heat. Although Dr. Celestine repeatedly recommended physical therapy and epidural steroid injections, no medical records indicate that Cunningham ever had either type of treatment. A claimant's lack of need for or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations. Doss v. Barnhart, 137 Fed. Appx. 689, 2005 WL 1463178, at *1 (5th Cir. June 21, 2005); Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

As the ALJ noted, the medical records do not reveal any significant diagnostic or clinical changes in plaintiff's condition between the time when he was working and simultaneously being treated by Dr. Celestine for chronic back and neck pain from the fall of 2005 until February 2006, when he was laid off (Tr. 154-56), and the period after he was laid off. (Tr. 138-53). Plaintiff's cervical and lumbar spine x-ray results on September 27, 2006 were consistent with his prior MRI results on December 2, 2003.

During nearly two years of treatment, Dr. Celestine's diagnoses of chronic lower back and neck pain and degenerative disc disease were unchanged. Dr. Celestine's progress notes state, and Cunningham testified, that he stopped working because he was laid off after Hurricane Katrina (Tr. 32, 154),[7] not because his medical impairments prevented him from working. In addition, he testified that, after he was laid off, he found a job cleaning up and stacking doors. Although he only worked at that job for one day, he did not leave because he was physically incapable of performing the work, but because he was told by the company that he could not work there. (Tr. 32).

The medical record as a whole substantially supports the ALJ's conclusion that plaintiff was not so functionally incapacitated during the relevant time period as Dr. Celestine stated in his January 31, 2007 Physical Capacity Evaluation. Accordingly, this assignment of error lacks merit.

2. <u>The ALJ's decision was based on substantial evidence.</u>

Cunningham argues that the ALJ's decision was not based on substantial evidence because the ALJ relied on Dr. Isaacson's opinion. Plaintiff contends that Dr. Isaacson's opinion is deficient because he relied on Dr. Mathai's report, including specifically the results of the x-rays that she ordered, but Dr. Isaacson failed to discuss the results of

---

[7]Dr. Mathai's notation in her report that Cunningham was laid off before Hurricane Katrina appears to be incorrect. (Tr. 112).

17

MRI's performed on plaintiff's cervical and lumbar spine on December 12, 2003 and June 14, 2000. (Tr. 107, 157-59). Therefore, Cunningham argues, neither Dr. Isaacson's opinion nor the ALJ's findings based on that opinion were supported by substantial evidence.

The ALJ properly relied on Dr. Isaacson's opinion. First, the MRI results from December 12, 2003 and June 14, 2000 predated plaintiff's alleged disability onset date by more than two years and therefore were not relevant to establishing that he was disabled for a continuous period of twelve months on or after May 1, 2006.

Second, the two MRI's were performed while plaintiff was working as a pipe tester. Because he was working, by definition he was not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Thus, these test results could not conceivably have established that he was disabled more than two years later.

Third, to the extent that the December 12, 2003 MRI results might have been relevant, Dr. Mathai reviewed them as part of her examination and report. The results thus were taken into consideration by a medical expert on whose opinion the ALJ relied.

Fourth, the ALJ mentioned the 2003 MRI results three times in his opinion, indicating that he had reviewed these results and compared them to the medical records from the relevant time period. (Tr. 17, 19, 21). The ALJ found that plaintiff's clinical

and diagnostic findings were essentially unchanged from 2003, when plaintiff was admittedly working.

For these reasons, Cunningham cannot show that the ALJ's decision would have changed had Dr. Isaacson discussed the MRI results fully. This assignment of error is meritless.

## CONCLUSION

The ALJ did not err by failing to grant the opinion of plaintiff's treating physician controlling weight or by relying on Dr. Isaacson's opinion. Substantial evidence supports the ALJ's findings.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

19

notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___26th___ day of May, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE